IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff*, v. ENVIGO RMS, LLC, *Defendant*. | Case No. 6:22-00028-NKM |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER**

Envigo RMS, LLC ("Envigo") is an Animal Welfare Act ("AWA")-licensed breeder that operates a facility in Cumberland, Virginia ("Cumberland Facility"), which is home to thousands of beagles that Envigo breeds to sell to research facilities. In the last 10 months, Envigo has been cited for over 60 violations of the AWA and its implementing regulations and standards at its Cumberland Facility. On May 18, 2022, the United States Department of Agriculture's ("USDA") Office of Inspector General and other law enforcement began executing a federal search warrant at the Cumberland Facility.[1] The Designated Lead Veterinarian, Dr. Samantha Moffitt, assisting the United States in the execution of the warrant, identified 145 dogs and puppies in "acute distress."[2] *See* Ex. G (Declaration of Dr. Samantha Moffitt) ¶ 8. Federal

---

[1] The warrant authorizes law enforcement to search for and seize evidence of violations of the AWA, 18 U.S.C. § 371 (conspiracy to commit offense or to defraud the United States); 18 U.S.C. § 1001 (material false statements); and 18 U.S.C. § 1512 (witness tampering).

[2] Acute distress means any animal requiring <u>immediate</u> veterinary treatment or other care to promptly alleviate a life-threatening illness, injury or any suffering, as deemed by a licensed veterinarian. Ex. G ¶ 8.

1

agents also found a piece of paper titled "necropsy," which contained only one sentence: "unknown—pup eaten—only has a head left." Ex. F (May 16, 2022 Necropsy Report).

In light of the serious nature of the violations at issue, Envigo's repeated failure to bring its Cumberland Facility into compliance with the AWA, and the May 18, 2022, observations during the execution of the warrant, it is likely that Envigo will continue to violate the AWA unless enjoined. Therefore, this Court should grant the United States a temporary restraining order ("TRO") pursuant to 7 U.S.C. § 2146(c) and/or the Court's inherent equitable authority under Federal Rule of Civil Procedure 65(b)(1) against Envigo, its agents, servants, employees, and those working in active concert with it, to halt Envigo's unlawful operations at the Cumberland Facility and require Envigo to provide humane care for the animals at the facility in compliance with AWA's standards and regulations. The Court should issue the TRO without notice to Envigo due to the nature of the criminal investigation and the substantial likelihood that Envigo will dispose of some dogs and puppies and fail to create and maintain accurate and complete records of animal births and deaths if there is no TRO in place before federal agents must leave the Cumberland Facility. *See* Ex. H (Declaration of Mary Hollingsworth).

I. **THE ANIMAL WELFARE ACT: STATUTORY AND REGULATORY BACKGROUND**

Congress enacted the AWA to, *inter alia*, "insure that animals intended for use in research facilities . . . are provided humane care and treatment." 7 U.S.C. § 2131(1). The AWA imposes "minimum requirements" for handling, housing, feeding, watering, sanitation, and adequate veterinary care, among other requirements. *Id*. § 2143(a)(2)(A). AWA-licensed dealers must comply in all respects with the regulations and standards setting out those minimum requirements. 9 C.F.R. § 2.100(a).[3] Indeed, by signing the application form for a license, the

---

[3] The AWA defines a "dealer" as "any person who, in commerce, for compensation or profit,

2

applicant acknowledges that it has reviewed the AWA and its regulations and standards and "agrees to comply with them." 9 C.F.R. § 2.2. Anyone who falls within the statutory definition of a dealer must obtain and maintain a valid license from the Secretary. 7 U.S.C. § 2134 (prohibiting dealers from conducting AWA-regulated activities unless they "have obtained a license from the Secretary and such license shall not have been suspended or revoked").

The AWA authorizes USDA to conduct investigations or inspections as necessary to determine whether any dealer has violated or is violating any provision of the AWA or its regulations or standards. 7 U.S.C. § 2146(a) (The USDA "shall, at all reasonable times, have access to the places of business and the facilities, animals, and those records required to be kept . . . of any such dealer."). The United States district courts are "vested with jurisdiction specifically to enforce, and to prevent and restrain violations of this chapter, and shall have jurisdiction in all other kinds of cases arising under this chapter" except in one instance not applicable here. 7 U.S.C. § 2146(c).

## II.     THE CUMBERLAND FACILITY: FACTUAL BACKGROUND

Envigo holds Class A license number 32-A-0774, and owns, deals in, and breeds the beagles that are the subject of this action at its Cumberland Facility. Envigo has a pattern and practice of violating the AWA and the regulations and standards promulgated thereunder. Since USDA's Animal and Plant Health Inspection Service ("APHIS") first inspected the Cumberland Facility in July 2021, Envigo has been cited over 60 times by APHIS inspectors. *See* Exs. A-E. The citations fall into the following major categories: (1) failure to provide adequate veterinary care; (2) failure to provide uncontaminated, palatable food of sufficient quantity and nutritive

---

delivers for transportation, or transports, except as a carrier, buys, or sells, or negotiates the purchase or sale of, (1) any dog or other animal whether alive or dead for research, teaching, exhibition, or use as a pet." 7 U.S.C. § 2132(f); *see also* 9 C.F.R. § 1.1 (definition of dealer).

value; (3) failure to keep dogs safe; (4) exposing dogs to unsanitary and unsafe conditions; (5) failure to employ a sufficient number of qualified employees to care for the number of dogs at the Cumberland Facility; and (6) failure to make and retain accurate and complete records. More than half of those citations were "critical" or "direct" violations[4]—the most serious type of AWA citation.

During the July 2021 inspection,[5] Envigo was cited for failing to investigate and accurately diagnose the cause of death for 300 puppies that had died in a seven-month time period. *See* Ex. B (July 2021 Inspection Report Part 2) at 2. For each of those puppy deaths, the cause of death was listed as "unknown causes." *Id*. Envigo staff could not identify a cause of death for 173 of those puppies because their bodies had begun decomposing before a necropsy could be done. *See* Ex. B at 3. Pursuant to guidance from Envigo's attending veterinarian, Envigo staff was not required to notify the attending veterinarian when puppies were found dead and animal care staff were allowed to make the decision about whether to perform a necropsy. Inspectors also identified multiple dogs with medical problems that had not been treated—and for some dogs, not even identified—prior to the inspection, including a dog suffering from such severe dental disease that the roots of the teeth were visible. Ex. A (July 2021 Inspection Report Part 1) at 2-5. APHIS inspectors also found that, between January 1, 2021, and July 22, 2021, 71 dogs were injured when a body part was pulled through the wall of their enclosures by a dog in

---

[4] A "critical" noncompliance is one that has a "serious or severe adverse effect on the health and well-being of the animal." Animal Welfare Inspection Guide, USDA at 2-10. https://www.aphis.usda.gov/animal_welfare/downloads/Animal-Care-Inspection-Guide.pdf ("APHIS Animal Welfare Inspection Guide") (last visited May 19, 2022). A "direct" noncompliance is a critical noncompliance that is having a serious or severe adverse effect on the health and well-being of the animal at the time of the inspection. *Id*. at 2-11.

[5] A "routine" inspection is an unannounced, complete inspection of every aspect of the facility that is regulated under the AWA. APHIS Animal Welfare Inspection Guide at 3-23.

an adjacent enclosure. *See* Ex. B at 7. A review of records revealed that every one of these dogs was euthanized, even those with minor injuries. *Id*. APHIS inspectors also found that over 200 beagle puppies were housed in enclosures that contained flooring with openings large enough for the beagle puppies' feet to pass through up to their shoulders. *See* Ex. A at 9-10. APHIS inspectors observed Envigo staff members trying for approximately three minutes to free a trapped female dog. *See* Ex. A at 10.

APHIS returned to the Cumberland Facility on October 25, 2021, to conduct a focused inspection.[6] APHIS inspectors determined that Envigo had failed to correct 11 different noncompliances, of which six were among the most serious violations—"directs" and "criticals." *See* Ex. C (October 2021 Inspection Report) at 3, 5-6, 8-10, 12-13. Envigo was cited for multiple dogs with medical conditions that were not previously identified or treated, including a female beagle with multiple skin lesions and swelling on all four feet. *See id*. at 4. APHIS inspectors also found that nine dogs had been injured after a body part was pulled through the wall by a dog in an adjacent kennel and, once again, Envigo had euthanized all of the injured dogs regardless of whether the injury was minor or substantial. *Id*. at 8. Other dogs were observed with fight wounds, and yet Envigo had taken no steps to address the issue of the beagles fighting each other. *Id*. at 9-10. Finally, Envigo had not replaced the noncompliant flooring and, thus, APHIS inspectors observed multiple puppies with legs and feet passing through the openings in the floors of their enclosures. *Id*. at 8.

During the November 2021 routine inspection, APHIS determined that Envigo once

---

[6] A "focused" inspection may include: re-inspection for direct noncompliances identified during a previous inspection; re-inspection for a specific noncompliance identified during a previous inspection; a partial inspection of the facility, such as animals only or records only; or a partial inspection to follow up on a public complaint concerning animal welfare. *See* APHIS Animal Welfare Inspection Guide at 3-24.

5

again failed to meet numerous minimum requirements, including for adequate veterinary care. *See* Ex. D (November 2021 Inspection Report). Thirty dogs with severe dental disease, including loose teeth, exposed roots of teeth, and bleeding gums, had not been treated despite Envigo staff observing the condition as early as August 2021. *See id.* at 3. An additional 34 beagles had medical conditions that had not been observed by Envigo staff let alone treated. *See id.* at 4. Upon review of medical records documenting the euthanasia of dogs and puppies, APHIS inspectors found that many puppies were not receiving anesthesia prior to being euthanized. *See id.* at 2-3. APHIS inspectors also found that the enclosures still failed to keep dogs safe from injury by attacks from dogs in adjacent enclosures. *See id.* at 12. In addition, Envigo continued to fall short of the minimum requirements for feeding and sanitation. APHIS inspectors found food receptacles that contained moldy feed and live maggots. *Id.* at 15.

When APHIS returned four months later, inspectors again observed food receptacles that had excessive grime and were filled with moldy, wet food. *See* Ex. E (March 2022 Inspection Report) at 6. APHIS inspectors also identified 97 dogs with injuries consistent with a fight. *See id.* at 5. The flooring in enclosures remained noncompliant, and medical records indicated that multiple dogs had been injured as a result of being stuck in the flooring. *See id.* at 4-5. During this inspection, APHIS inspectors personally observed multiple dogs stuck in the flooring. *See id.* at 4.

On May 18, 2022, law enforcement officers began executing a federal warrant at Envigo's Cumberland Facility. That warrant authorized the examination of every dog and puppy at the facility, which will continue to take place over the course of several days by a team of veterinarians. The warrant also authorized the seizure of any animal determined by a licensed veterinarian to be in acute distress. *See supra* n.2. In addition, a designated team assisting with

6

the execution of the search warrant is assessing each animal enclosure as well as the buildings themselves for compliance with the AWA. This motion addresses the numerous, serious violations identified on day one of the execution of the warrant.

### III. STANDARD OF REVIEW

The standard for a TRO is the same as the standard for granting a preliminary injunction. *See U.S. Dep't of Lab. v. Wolf Run Mining Co.*, 452 F.3d 275, 281 n.1 (4th Cir. 2006) (noting that a TRO is distinguishable from a preliminary injunction only in duration). The primary differences between a TRO and preliminary injunction are that a TRO may issue without notice to the opposing party and that TROs are initially limited in duration to fourteen days. Fed. R. Civ. P. 65(b)(1)-(2).

Traditionally, a party seeking an injunction must demonstrate: (1) a likelihood of success on the merits; (2) that they are likely to suffer irreparable harm if the injunction is denied; (3) that the balance of equities tips in their favor; and (4) that the injunction is in the public interest. *Pashby v. Delia*, 709 F.3d 307, 320-21 (4th Cir. 2013) (citing *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)). However, when the United States is moving for injunctive relief pursuant to a federal statute that expressly provides for such relief, no showing of irreparable harm is required. *See, e.g., Rum Creek Coal Sales v. Caperton*, 926 F.2d 353, 362 n.12 (4th Cir. 1991) (noting that the irreparable harm requirement has been "less strictly construed" in certain "areas in which remedies are governed by federal law" such as "where an injunction is authorized by a federal statute"); *Chao v. J.W. Roach & Sons Logging & Hauling*, No. 6:05-CV-00021, 2005 WL 8177416, at *1 (W.D. Va. Sept. 14, 2005) (explaining that the "United States . . . is not held to the requirements of a private litigant when it seeks the aid of the courts to give effect to a policy of Congress as manifested in a statute," and "[e]ven if the government does not show a likelihood of irreparable injury, an injunction may issue for the enforcement of an Act of

Congress when it is in the public interest." (citation omitted)).

Because the AWA explicitly authorizes the district court to grant injunctive relief, *see* 7 U.S.C. § 2146(c), the United States need not show irreparable harm. Instead, the United States need only show that Envigo is engaged in—or imminently will be engaged in—conduct that violates the AWA.

### IV. ARGUMENT

The United States is entitled to an ex parte TRO to ensure the safety and wellbeing of the beagles at the Cumberland Facility and to ensure that Envigo complies with the AWA. Fed. R. Civ. P. 65(b); *see also* Ex. H. Because the United States can meet all of the requirements for issuance of a TRO, the Court should grant the requested relief. Moreover, the Court should grant the government's request without first providing notice to Envigo because such notice is likely to result in irreparable harm, such as Envigo disposing of dogs and puppies to avoid having to comply with the AWA. *See* Ex. H. Further, Envigo is unlikely to create and maintain accurate and complete records of the disposal of animals or other records that reflect serious issues that may arise in the interim, such as injuries due to dog fights. *Id*.

#### 1. The United States is Likely to Succeed on the Merits of its Claims

First, the United States is likely to succeed on the merits of its claims. Envigo's record of noncompliance is well documented. *See* Exs. A, B (APHIS documented violations of 18 different AWA provisions during the July 2021 routine inspection); C (APHIS documented violations of 13 different AWA provisions during the October 2021 focused inspection); D (APHIS documented violations of 26 different AWA provisions during the November 2021 routine inspection); and E (APHIS documented violations of five different AWA provisions during the March 2022 focused inspection). And the observations during the search warrant reveal numerous, similar violations of the AWA. *See* Ex. I (Declaration of Amy Katherine

Taylor) ¶ 8 (unsanitary conditions), ¶¶ 9-16 (unsafe and overcrowded enclosures), ¶¶ 15, 17-21 (inadequate access to wholesome, nutritious, and uncontaminated food and water of sufficient quantity); Ex. G ¶ 8 (145 beagles deemed in need of immediate veterinary treatment or other care), ¶ 9 (inadequate provision of nutritious and palatable food to beagles of different ages). The observations during the execution of the search warrant demonstrate that the beagles at the Cumberland Facility are being kept in inhumane conditions. Envigo's violations are serious, particularly given the history of violations contained in the APHIS inspection reports and Envigo's failure to comply even after being informed by APHIS inspectors multiple times that its operations at the Cumberland Facility were being conducted in violation of the AWA.

Envigo has repeatedly and routinely violated the AWA by failing to provide the beagles at the Cumberland Facility the care that they are legally owed under the AWA.[7] Therefore, the United States easily satisfies the requirement to show a likelihood of success on the merits.

### a. Envigo is violating the Animal Welfare Act by providing inadequate veterinary care to the beagles at the Cumberland Facility

Envigo provides wholly inadequate veterinary care to the beagles in the Cumberland

---

[7] Under 7 U.S.C § 2139, a principal-agent relationship has been established between Envigo and its employees. That section instructs that:

> When construing or enforcing the provisions of [the AWA], the act, omission, or failure of any person acting for or employed by a . . . dealer . . . within the scope of his employment or office, shall be deemed the act, omission, or failure of . . . dealer . . . as well of such person.

7 U.S.C. § 2139. Under this provision, the "act, omission, or failure" of facility representatives and employees are considered to be Envigo's acts for purposes of the AWA. That Envigo's employees were the ones providing inadequate veterinary care or failing to provide wholesome and palatable food does not disturb the conclusion that Envigo violated the AWA. *See e.g., Cox v. U.S. Dep't of Agric.*, 925 F.2d 1102, 1105 (8th Cir. 1991) (rejecting argument that dealers did not violate the AWA because the dates in the records were supplied and recorded by their employees, as Section 2139 of the AWA imputes the acts of employees to their employers); *Hickey v. Dep't of Agric.*, 991 F.2d 803, *3 (9th Cir. 1993) (unpublished opinion) (imputing actions of licensee's mother to licensee under Section 2139 of the AWA).

9

Facility. The regulations and standards require, among other things, that dealers ensure that the animals in their custody receive adequate care, and that they take appropriate steps to prevent and treat diseases and injuries, communicate with the attending veterinarian, and educate their personnel. 9 C.F.R. §§ 3.13(a)(2)-(3); 2.40(a), (b)(2)-(3). Envigo has consistently violated the adequate veterinary care regulations and, despite repeated warnings, has failed to attend to the beagles' well-being. *See* Ex. A at 2-6; Ex. B at 2-4, 12-14; Ex. C at 2-5; ; Ex. D at 2-6; Ex. E at 2.

In many instances, there is no evidence that any veterinary medical professional ever examined the beagles or diagnosed them as having a non-treatable disease before they were euthanized. *See* Ex. C at 14-15, Ex. B at 13. Moreover, following their deaths, Envigo did not consistently have necropsies performed, foreclosing any opportunity to identify and diagnose the veterinary care issues. *See* Ex. B at 2, 13; Ex. C at 5-6, 12-15; Ex. D at 5.

During the execution of the search warrant, in-field exam forms are being completed for beagles at the Cumberland Facility. Based on the veterinary exams from the first day, 145 beagles were found to be in "acute distress" because they required "immediate veterinary treatment or other care to promptly alleviate a life threatening illness/injury or any suffering." Ex. G ¶ 8. The beagles in "acute distress" were found to be in need of prompt removal from the Cumberland Facility and placed with a designated third-party to receive humane care. *Id*.

In addition to those beagles found to be in "acute distress," veterinarians identified many others dogs with concerning veterinary issues. At least one beagle was found with injuries indicative of a fight. *See* Ex. J at 6 (dog found with sealed puncture wounds, scarring on left ear). A number of beagles had dental disease and needed dental cleaning. *Id*. at 10, 11, 12, 13 (recommending dental cleaning). Numerous other dogs had injuries to their feet or paws. *Id*. at 8

(inflammation between all four paws); 9 (swollen paws); 12 (damp red paws); 18 (wet and inflamed feet, swollen paws). Yet other dogs had distended abdomens. *Id*. at 55 ("very" distended abdomen); 56 (distended abdomen); 58 (distended abdomen); 61 (distended abdomen). It is clear that Envigo is still not providing adequate veterinary care to the beagles at the Cumberland Facility.

### b. Envigo is violating the Animal Welfare Act by failing to provide each beagle with uncontaminated, wholesome, and palatable food and to make potable water continuously available to all dogs

Envigo has consistently failed to provide the beagles at the Cumberland Facility with food that is uncontaminated, wholesome, palatable, and of sufficient quantity and nutritive value to maintain the normal condition and weight of the animal, and a diet that is appropriate for the individual animal's age and condition, in violation of 9 C.F.R. § 3.9(a). *See* Ex A. at 7, 12-13; Ex. B at 11-12; Ex. D at 15-16; Ex. E at 6. The violations continued during the execution of the search warrant.

As an initial matter, the enclosures observed on May 18, 2022, included only one food receptacle regardless of how many puppies or dogs were housed in the enclosure. Ex. I ¶ 21. Due to the size and shape of the opening or feeder, only one dog could access food at a time. *Id*. In addition, in at least two enclosures, the openings had sharp edges. *Id*.

Investigator Amy Katherine Taylor ("Investigator Taylor") observed that each food receptacle in each enclosure contained the same food—with no differentiation of food provided to adult dogs, nursing mothers, and young puppies. Ex. I ¶ 20. This was so even though puppies and younger dogs have "food needs that are different from the food needs of adult dogs," and "[w]eaned puppies and younger dogs need to be fed more often and should be fed a diet that is higher in calorie and protein to meet their specific age-requirement needs," as Dr. Moffitt explained. Ex. G ¶ 9. And during the warrant, Investigator Taylor "repeatedly observed food

11

receptacles with mold under the feeder," and covered with lids that were "either broken or did not close." Ex. I ¶ 19.

Additionally, not all beagles had access to potable water. In multiple enclosures holding puppies, Investigator Taylor observed that there were beagle puppies that "could not access the [one spigot system that distributes water to the beagles in each enclosure] to get water on their own" but once Investigator Taylor "held down the spigot to release water," the "puppies immediately rushed to the spigot to get water, and drank heavily and quickly." Ex. I ¶ 18.

### c. Envigo is violating the Animal Welfare Act by failing to meet the minimum standards for handling and housing

Envigo has also consistently failed to meet the minimum standards for handling and housing the beagles, resulting in the unnecessary suffering and, at times, death of beagles at the Cumberland Facility. 7 U.S.C. § 2143(a)(1), (2); 9 C.F.R. §§ 2.131(b), 3.7. *See* Ex. A at 6, 7-11; Ex. B at 5-8; Ex. C at 6-7, 8-10; Ex. D at 7-9, 11-15; Ex. E at 2-5.

During the execution of the search warrant, Investigator Taylor observed "widespread fighting" between beagles. Ex. I ¶ 15. Fighting was observed between beagles contained in the same cage: in one enclosure, two dogs were "attacking each other on the ground of the enclosure" and, in that same enclosure, another beagle "attacked in an aggressive manner" beagles that tried to eat from the sole food receptacle in the enclosure. *Id*. Fighting was also observed between beagles located in adjacent enclosures. *Id.* ¶ 16. For those enclosures, Investigator Taylor observed "beagles stand[ing] on their hind legs to physically attack beagles located in adjacent enclosures through openings in the partition between the enclosures." *Id*. Despite the instances of beagles in adjacent enclosures attacking each other, it was rare to see a partition wall between enclosures to prevent the beagles from physically accessing and attacking each other. *Id*.

### d.     Envigo is violating the Animal Welfare Act by subjecting the beagles at the Cumberland Facility to Unsafe and Unsanitary Conditions

Envigo has repeatedly exposed the beagles to unsafe and unsanitary conditions. *See* 7 U.S.C. § 2143(a)(1), (2); 9 C.F.R. §§ 3.1, 3.6, 3.11. *See* Ex. A at 12-13; Ex. B at 8-12; Ex. C at 7-8, 10-12; Ex. D at 9-10, 16-19. The search warrant revealed that during a walkthrough of the Cumberland Facility, building G2 was found to be "extremely pungent and contain[ing] large amount[s] of feces in the outdoor kennel areas," and many of the enclosures in the building had bugs present. Ex. I ¶ 8.

In one enclosure, a "beagle with its jaw stuck within the [welded bars used for the enclosure walls]" was found. Ex. I ¶ 10.

Throughout the facility, there were "widespread problems with the flooring in the enclosures." Ex. I ¶ 11. In multiple enclosures, "when animals were on the flooring, the flooring began to move up and down with the weight of the animals." *Id*. Investigator Taylor also "repeatedly observed" beagles who were trapped in the flooring in the enclosures. *Id*. ¶ 12. During just the first day of the search warrant execution, on "at least six different occasions" Investigator Taylor had to "ope[n] a cage to free a beagle who had gotten its feet stuck in the flooring." *Id*. For certain enclosures, gaps between the flooring and the edge of the enclosure were "large enough to allow for a beagle's feet or toes to pass through or get stuck." *Id*. ¶ 14.

In enclosures housing puppies, black rubber mats covered the flooring. Ex. I ¶ 13. However, the rubber mats did not prevent the puppies from having their feet fall through the flooring. In one enclosure, the rubber mat did not cover the entire flooring, which could allow for puppies' feet to pass through the holes in the flooring. *Id*.¶ 13. In one enclosure, the mat had been "pulled back such that it exposed half of the flooring" and led to "gaps that puppies could fall through." *Id*. In other enclosures, there were "gaps between the black mat and the edge of

13

the enclosure." *Id*. For these enclosures, Investigator Taylor observed puppies' feet passing through the gaps and puppies' feet getting trapped. *Id*. Indeed, Investigator Taylor had to "ope[n] an enclosure and fre[e] a puppy whose feet had gotten trapped in the gap between the black mat and the edge of the enclosure." *Id*.

The dogs at the Cumberland Facility are subject to inadequate and unsafe living conditions.

### 2. The United States Need Not Show a Likelihood of Irreparable Harm Absent Injunctive Relief But Has Anyway

Because an injunction is expressly authorized by the AWA and the United States has made a substantial showing of the likelihood of success on the merits of its underlying claims that Envigo is violating the AWA, this Court need not find irreparable harm to grant an injunction. *See Pathways Psychosocial v. Town of Leonardtown*, 223 F. Supp. 2d 699, 717 (D. Md. 2002) (presuming irreparable harm from violation of civil rights statute); *Doe v. Wood Cnty. Bd. of Educ.*, 888 F. Supp. 2d 771, 777 (S.D. W. Va. 2012) (granting preliminary injunction and holding that "a violation of Title IX may constitute irreparable harm" (citing *McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 301-02 n.25 (2d Cir. 2004))); *see also Shafer v. United States*, 229 F.2d 124, 128 (4th Cir. 1956) ("It is a familiar doctrine that an injunction is an appropriate means for the enforcement of an Act of Congress when it is in the public interest.").

Alternatively, Envigo has demonstrated that, absent a TRO, it will continue to violate the AWA thereby causing irreparable harm to the United States for which there is no adequate remedy. Irreparable harm is suffered "when monetary damages are difficult to ascertain or are inadequate." *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994) (citations omitted). "The plaintiff must demonstrate a likelihood

14

of irreparable harm without a preliminary injunction; a mere possibility of harm will not suffice." *Williams v. Rigg*, 458 F. Supp. 3d 468, 474 (S.D. W. Va. 2020) (citation omitted).

As established above, Envigo's continued, serious violations of the AWA will result in the unnecessary suffering, serious illness, and even death of the dogs and puppies that are under Envigo's care. The veterinary team assisting the United States in executing the warrant has identified some beagles who will remain on the property that need veterinary care. It has been noted in past APHIS inspection reports that Envigo has opted to euthanize puppies and dogs with even minor injuries or conditions rather than provide them adequate veterinary care and address the underlying AWA violation that resulted in the injury or condition. *See* Ex. H ¶ 5. In light of this practice, the United States is likely to experience irreparable harm absent the issuance of a TRO granting the United States its request for relief to address the most concerning AWA violations. *See United States v. Lowe*, No. 20-CV-0423-JFH, 2021 WL 149838, at *14 (E.D. Okla. Jan. 15, 2021) (finding in the alternative that defendants' continued failure to provide adequate care to their AWA-protected animals would result in irreparable harm absent injunctive relief). Such irreparable harm cannot be cured after the fact by monetary damages.

Without relief from this Court requiring Envigo to provide the beagles at its Cumberland Facility the humane care that they are legally owed under the AWA, the United States cannot effectively enforce the AWA against Envigo, who continues to willfully violate it. Therefore, to the extent it applies, the irreparable harm prong weighs in favor of issuing the TRO.

3. **The Balance of Equities Weigh in Favor of the United States**

Third, granting a TRO will balance the equities of providing humane care to the beagles at the Cumberland Facility. Congress made clear in its AWA statement of policy that animals intended for use in research facilities must be provided humane care and treatment. *See* 7 U.S.C.

§ 2131(1). Moreover, it is always in the public interest for citizens to follow the law and not financially profit from their law-breaking endeavors. In contrast to the irreparable harm to the United States in the absence of injunctive relief, Envigo bears only the burden of complying with its obligations under the AWA—the very obligations it agreed to comply with when it chose to apply for an AWA dealer license. *See* 9 C.F.R. § 2.2. The United States merely seeks to ensure that Envigo does not take unilateral action impacting the availability, health, and wellbeing of the animals in Envigo's care that would prevent the Court from providing effective relief to the United States. Thus, the balance of equities weighs in favor of granting the United States its requested injunctive relief.

### 4. The Public Interest Weighs in Favor of Granting the United States its Requested Temporary Restraining Order

Finally, issuing the TRO serves the public interest. As already noted, Congress made clear that animals covered by the AWA must be treated and cared for in a humane manner. *See* 7 U.S.C. § 2131(1) (stating that one purpose of the AWA is insure "humane care and treatment" of animals). The United States seeks an order from this Court that requires Envigo only to finally correct serious violations of the AWA. It is well within the public interest that this Court enter an order restraining Envigo from violating the AWA at its Cumberland Facility.

Injunctive relief is particularly appropriate where, as here, Envigo has persisted in violating the AWA, despite a regulatory agency's repeated warnings. *See United States v. Scenic View Dairy, LLC*, No. 1:10-CV-865, 2011 WL 3879490, at *16 (W.D. Mich. Sept. 1, 2011) (noting that "Defendants' violative conduct . . . has continued over several years despite repeated notices from the [Food and Drug Administration] that Defendants needed to bring their operation into compliance and how they could do so . . . . the extent of [the] . . . past violations gives rise to an inference that future violations are likely to occur"). After a review and analysis of the

16

information obtained just the first day of the execution of the federal warrant at the Cumberland Facility, it is clear that Envigo continues to be in violation of multiple provisions of the AWA. When viewed against a backdrop of inspections that USDA has conducted at the Cumberland Facility, during which more than 60 violations of the AWA have been recorded, it is clear that voluntary compliance[8] is not likely to be achieved absent injunctive relief from this Court.

Envigo has demonstrated a lack of regard for the health and welfare of the beagles at the Cumberland Facility, USDA's authorities and requirements, and has made clear that it has no intention of coming into full compliance with the AWA. Based on the history of continued violations, the United States believes that, absent an injunction, Envigo will continue to violate the AWA, and the public interest will be in jeopardy. Therefore, the Court should grant the United States' Ex Parte Motion for Temporary Restraining Order as such an order is necessary to ensure the health and welfare of the beagles at the Cumberland Facility.

## V. CONCLUSION

Envigo's history of violating the AWA—as documented in the APHIS inspection reports and bulwarked by the observations during the execution of the federal warrant—demonstrates a reasonable likelihood that Envigo will continue to circumvent the AWA unless this Court enters the requested injunctive relief. Even after being warned that its activities were unlawful anddespite USDA providing Envigo with not only information on how to comply with the AWA but abundant opportunity to comply, Envigo has continued to operate the Cumberland Facility in

---

[8] The United States should obtain injunctive relief even if Envigo states that it has begun or plans to remodel its business operations in a purported effort to comply with the AWA. *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) (request for injunctive relief is not mooted by voluntary cessation if "there exists some cognizable danger of... something more than the mere possibility which serves to keep the case alive"); *United States v. Odessa Union Warehouse Coop.*, 833 F.2d 172, 176 (9th Cir. 1987) ("Courts must beware of attempts to forestall injunctions through remedial efforts and promises of reform that seem timed to anticipate legal action, especially when there is the likelihood of recurrence" (citation omitted)).

17

blatant disregard for the law. A TRO—which is narrowly tailored to Envigo's history of continuing serious violations—is necessary and appropriate to insure that the beagles at the Cumberland Facility are provided the humane care and treatment that they deserve and are legally owed.

DATED: May 19, 2022

Respectfully Submitted,

| | |
|---|---|
| CHRISTOPHER R. KAVANAUGH<br>United States Attorney | TODD KIM<br>Assistant Attorney General<br>Environment & Natural Resources Division |
| /s/ Anthony P. Giorno<br>ANTHONY P. GIORNO<br>First Assistant United States Attorney<br>Virginia Bar No. 15830 | /s/ Mary Hollingsworth<br>MARY HOLLINGSWORTH<br>Senior Trial Attorney<br>Arizona Bar No. 027080<br>United States Department of Justice<br>Environment & Natural Resources Division<br>Wildlife & Marine Resources Section<br>999 18th Street, Rm. 370<br>Denver, CO 80202<br>Mary.hollingsworth@usdoj.gov<br>303-844-1898<br>SHAMPA A. PANDA<br>Trial Attorney<br>California Bar No. 316218<br>P.O. Box 7611, Ben Franklin Station<br>Washington, D.C. 20044-7611<br>Shampa.panda@usdoj.gov \| 202-598-3799<br>Fax: 202-305-0275<br>*Attorneys for the United States of America* |